## JOSEPH v. KIBER. (No. 1057.)

(Court of Civil Appeals of Texas. Beaumont. March 27, 1924. Rehearing Denied April 9, 1924.)

1. **Judgment ⟐⟶461(4)—Rule stated as to sufficiency of evidence to support attack on judgment for lack of service.**

An attack on a judgment for lack of service of process must fail, where it expressly recites that due service was had and the officer's return on the citation in the suit shows that due service was had, where the evidence offered in support of the attack is that of only one witness, however credible he may be.

2. **Judgment ⟐⟶461(4) — Process ⟐⟶149 — Recitals of service may be disproved by one witness if strongly corroborated.**

The recitals of due service contained in a judgment, as well as in the officer's return, may be disproved by only one witness, if his evidence is strongly corroborated.

3. **Judgment ⟐⟶461(4)—Process ⟐⟶149—Corroborating evidence to impeach return of service must come from source other than witness attacking.**

The corroborating facts and circumstances to disprove the recitation of due service in a judgment, or in an officer's return, must come from a source other than that of the

one witness who would attack the service of citation.

**4. Judgment ⊚⇒461(4)—Process ⊚⇒149—Evidence held insufficient to impeach recitals of judgment and return of service in suit on account.**

In a suit to set aside a judgment on an account, where the judgment recited and the officer's return showed due service of citation on plaintiff, corroborative evidence in support of plaintiff's testimony that no citation in the suit had ever been served on him *held* not sufficient to sustain a finding of lack of service.

Appeal from District Court, Jefferson County; Geo. C. O'Brien, Judge.

Petition for injunction by Albert Kiber against Charles Joseph. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Gordon, Lawhon, Davidson & Pool, ' of Beaumont, for appellant.

Dycus & Shivers, of Port Arthur, for appellee.

HIGHTOWER, C. J. This controversy and appeal are based upon the following facts:

On June 15, 1922, Charles Joseph, the appellant here, filed a suit in the justice court of precinct No. 1 of Jefferson county against Albert Kiber, the appellee, based on an open account for merchandise claimed by Joseph in that suit to have been sold by him to Kiber. On August 28, 1922, the justice court rendered and entered a judgment by default in favor of Joseph against Kiber, the latter not having appeared or answered, for $116.87, the full amount sued for by Joseph, with interest from the date of the judgment at the legal rate. The judgment of the justice court expressly recites that Kiber was duly served with citation in that suit, but that he did not appear or answer.

On September 13, 1922, Joseph caused a writ of execution to be issued against Kiber on the justice court judgment, but that writ was returned nulla bona. Thereafter, on April 28, 1923, an alias execution was issued on the justice court judgment, but Kiber prevented its levy by applying to Hon. George C. O'Brien, judge of the Fifty-Eighth judicial district, for a temporary injunction, which was granted.

In his petition for injunction, Kiber alleged that he was never served with citation in the justice court case, and that he had not waived such service, and that therefore the justice court judgment was absolutely null and void, and he prayed that upon final hearing the judgment of the justice court be held to be null and void, and that it be canceled, and that the temporary injunction be made permanent.

Thereafter, in due time, Joseph filed in the district court his answer and motion to dissolve the temporary injunction, alleging that Kiber was duly served with citation in the justice court case, as expressly recited in the judgment, and as shown by the return of the officer on the citation, and prayed that Kiber be denied the relief sought by him.

Trial in the district court was had without a jury, and resulted in a judgment for Kiber canceling the justice court judgment and making permanent the temporary injunction, and Joseph duly prosecuted this appeal from such judgment.

In addition to the express recitation of due service contained in the justice court judgment, the officer's return on the citation, which was made by a deputy constable, showed that Kiber was served in person on June 22, 1922. The deputy constable also testified in this case, and he was positive that he served the citation on Kiber, whom he knew well, and that he had a distinct recollection of having done so. He stated that it was his best recollection that he served Kiber some time in the afternoon at Kiber's Café in the city of Port Arthur.

Kiber, testifying as a witness in this case, was positive that he was not served with citation in the justice court, and that he never knew that the suit had been filed. He further stated that he did not own the Kiber Café at the time the merchandise was sold by Joseph in January and February, 1922, to recover the value of which the justice court suit was brought, but that the café known as the Kiber Café was at that time owned and operated by another, and that he (Kiber) never bought anything from Joseph and never owed him anything. Kiber further testified that he had at one time owned and operated the Kiber Café, but sold it to another about February 15, 1921, and repurchased the café about the 8th or 9th of May, 1922, and commenced to operate it about June 1, 1922, and that he was the owner of the café at the time the justice court suit was filed and at the time of the purported service upon and judgment against him in that suit, and that he is still such owner. He further testified that he had no knowledge of any claim against him by Joseph until about the 15th of June, 1922, at which time he received a letter from Mr. Joseph's attorney in the city of Beaumont, to the effect that the attorney had the claim for collection, and that he at once went to Beaumont and saw Mr. Joseph's attorney and explained to him that he did not owe Mr. Joseph anything; that during that conversation the attorney told him that he would again talk to Mr. Joseph about the matter before filing suit, and would let Kiber know Joseph's decision in the matter before a suit would be filed; that he heard no more from Joseph's attorney about the matter and never knew that the justice court suit had been filed until he was threatened with the

execution which this suit was brought to enjoin.

Kiber further testified that at the date of the purported service in the justice court suit, he did not stay in the café all the afternoon, but that he would go out at 2 o'clock and not return again until 5:30, and that he could not have been served by the deputy constable in the café between those periods. He further stated that his café business was subject to execution, of which he ·was aware.

From the evidence as stated above, the trial court found that Kiber was never served with citation in the justice court, and the only question for our determination is whether the evidence was sufficient, when tested by the rule well established in this state, to warrant that finding by the trial court.

[1-3] When it is attempted to set aside and cancel the judgment on the ground that the defendant in the judgment was not served with citation in the suit, and did not appear and answer, the rule in this state, as well as in many other jurisdictions. seems to be that if the judgment attacked expressly recites that due service was had and the officer's return on the citation in the suit shows that due service was had, the attack on the judgment for lack of service must fail where the evidence offered in support of the attack is that of only one witness, however credible he may be. This rule has its basis largely for reasons of public policy, as has been often declared by the appellate courts of this state. In some jurisdictions, it has ·been expressly held that a lack of service in such a suit must be established by at least two positive witnesses; but in this state, as we understand the rule at this time, it is that the recitation of due service contained in the judgment, as well as in the officer's return, may be disproved by only one witness, if his evidence be strongly corroborated. It is held, however, by all the courts· that the corroborating facts and circumstances must come from a source other than that of the one witness who would attack the service of citation. Randall v. Collins, 58 Tex. 231; Pierce-Fordyce Oil Ass'n v. Staley (Tex. Civ. App.) 190 S. W. 814; Swearingen v. Swearingen (Tex. Civ. App.) 193 S. W. 442; Godshalk v Martin (Tex. Civ. App.) 200 S. W. 535; McBride v. Kaulbach (Tex. Civ. App.) 207 S. W. 576.

In Randall v. Collins, Judge Gould, speaking for the Supreme Court of this state in a case of this character, had this to say:

"There must be two witnesses, or one witness with strong corroborating circumstances. If equity will allow one who has been guilty of no fault or negligence to contradict the sheriff's return by parol evidence for the purpose of having an unjust judgment by default set aside, we are of opinion that it should require the evidence to be clear and satisfactory. It is not like an ordinary issue of fact, to be determined by a mere preponderance of testimony. In the case of Driver v. Cobb, supra,

Chancellor Cooper says: 'Nor will one witness alone suffice to successfully impeach the return, for that would only be oath against oath. In analogy to the denials or averments of a sworn answer upon the defendant's knowledge, there should be two witnesses, or one witness with strong corroborating circumstances. And without reference to this rule, upon general principles, it would seem essential to the peace and quiet of society that these solemn official acts should not be set aside with the same ease as an ordinary act in pais.'"

Chief Justice Gould also cites in support of the opinion authorities from other jurisdictions on the point, and then concludes his opinion as follows:

"Even prudent men and officers are liable to forgetfulness and negligence; and if the judgments of our courts may be set aside, after having stood for years, on such evidence, there will indeed be no end to litigation, no certainty arrived at by any adjudication. This is a case where the jury have erred in matter of law, and, notwithstanding this is· the third verdict, we think that the judgment should be reversed and remanded."

True, in Randall v. Collins, the judgment attacked ·was considerably older than the judgment here attacked; but the principle announced is stated with such clearness that its application cannot be escaped in this case. In Swearingen v. Swearingen, a case involving the question here, we find this language:

"The evidence must be clear and satisfactory; also that there should be two witnesses, or one witness with [clear and] strong corroborating evidence."

In Pierce-Fordyce Oil Ass'n v. Staley, a case involving the question here, we find this language:

"That part of the opinion, that evidence to set aside a judgment must clearly and satisfactorily contradict the sheriff's return, seems to be the general rule, without any opposing authority that we are able to find, in other jurisdictions."

And then the court proceeds to quote and approve what was said by Chief Justice Gould in Randall v. Collins. In conclusion, the court further said:

"The return of service, either by a sheriff or by a disinterested person authorized by law to make it, is prima facie evidence of the material facts recited therein, and a court of equity should not set aside a judgment except upon clear, satisfactory, and convincing proof of lack of service of process by the person making it."

This court, in the case of McBride v. Kaulbach, speaking through Justice Brooke on the point, among other things, held:

"The authorities seem to be in support of the proposition that two witnesses are required to set aside an officer's return, or one witness

corroborated by strong, clear, and satisfactory circumstances."

We there quoted a number of authorities in support of the rule here announced.

There can be no question, under the decisions of this state, as to the rule in a case of this character, because the authorities are unanimous in stating the rule and in applying it as we have above stated it. The only difficulty that could possibly arise is in the application of the rule. In this case, the appellee has cited, among other authorities, the case of Harrison v. Sharpe, 210 S. W. 731, and contends earnestly that the holding in that case by the Amarillo Court of Civil Appeals, speaking through Associate Justice Boyce, is authority sustaining the trial court's judgment in this case. In the Harrison-Sharpe Case, the trial court found in favor of Mrs. Sharpe's contention that she had never been served with citation and entered an order setting aside the judgment in that case against her, and the appellate court affirmed that judgment. The facts of that case, briefly stated, were substantially as follows: Mrs. Sharpe, a widow, in 1905, bought two acres of land in the city of Dallas, paying therefor $3,000, $2,500 of which was in cash, and four notes were executed for the balance, due in four years. The property had a nice cottage upon it at the time Mrs. Sharpe purchased it, and she and her son, who was a single young man, about 25 years of age, lived in the cottage as their home. The son was employed in the city of Dallas, and out of his earnings paid off and discharged the four notes representing the balance due as purchase money. In 1909, a tax suit was filed in the district court of Dallas county against Mrs. Sharpe, and in 1910 a judgment in that suit was rendered against her by default, and the property was ordered sold in payment of the taxes found to be due, and the costs of suit. This judgment was rendered in 1910. Harrison, the appellant in that case, became the purchaser of the property at the tax sale. The suit by Mrs. Sharpe to set aside the tax judgment was filed in 1916. She alleged, substantially, that she was never served with citation in the case and knew nothing about the pendency of the tax suit until about the time the suit to set it aside was filed by her. The undisputed facts in that case further showed the following: Mrs. Sharpe and her son paid the taxes regularly upon the property ever since its purchase by them for all the years up to 1916, with the exception of the city taxes for the year 1907, and the city taxes for that year were not paid; but the state and county taxes were. Mrs. Sharpe and the boy both testified that they were unable to account for how they failed to pay the city taxes for the year 1907, and thought that they had done so. The amount of taxes, to recover which the tax suit was brought, was only $7.31, and the property at that

time was worth $3,500. Mrs. Sharpe had always paid her debts promptly, and the son had always paid the taxes on this property ever since his mother had owned it before they became delinquent, with the exception of the city taxes for the year 1907. In addition to the improvements that were on the property when Mrs. Sharpe purchased it, they made other valuable improvements, and in 1912 Mrs. Sharpe made a deed to her son for a portion of the property; he having an interest in it.

Mrs. Sharpe in that case testified that she was never served with any citation or had any notice whatever of the tax suit, and the boy testified that he had never heard of the tax suit. He further testified that if his mother had been served with a citation in a tax suit she would have immediately come down town to find him and notify him of that fact. The officer's return in that case showed due service, and he testified in person in the case and stated that he went to Mrs. Sharpe's residence in the city of Dallas on several occasions, before he actually served the citation, but found her out on such occasions, and was told by a lady who was present on the place that Mrs. Sharpe was off on a visit each time; but finally, as he testified, he found Mrs. Sharpe and served her with the citation. Both Mrs. Sharpe and her son testified that she was not out of the city of Dallas nor away from her home on such occasions during the year 1909, or at the time the purported service was had upon her, and that she was never away from Dallas except a little while during the year 1912, when she went to visit her daughter, who lived elsewhere. Upon these facts, stated substantially, the trial court held that Mrs. Sharpe was not served with citation in that case, and the appellate court, as we have stated, affirmed that judgment. In doing so, Judge Boyce recognized the rule in such cases as we have stated it hereinbefore, but said that the cogent facts and circumstances in that case in favor of Mrs. Sharpe's contention that she was not served were sufficient to warrant the trial court's judgment. He called attention to the fact that the small amount of $7.31 due for taxes was so out of proportion to the great value of the property that it could not be reasonably supposed that Mrs. Sharpe would have permitted the suit to go on with no hope of defeating the tax lien, had she been notified of its pendency. He further called attention to the fact that Mrs. Sharpe and her son had regularly kept up the taxes for each and every year before delinquency, with the exception of the city taxes for 1907, and that no reasonable contention could be made that they would have suffered the property to be sold for the small amount of taxes due the city for that year had they been notified of the suit. He further alluded to the uncontradicted and positive testimony of the son

that the matter of tax paying was in his hands, and that his mother would have come to him immediately if she had been served with a citation in the suit. There were a number of other facts and circumstances referred to by Judge Boyce in the opinion which, as he stated, made it unreasonable to suppose that Mrs. Sharpe would have permitted the tax suit to go on without defense if she had known of its filing. That case, as we consider, was an extreme one on the facts, and we agree with Judge Boyce in the conclusion reached, that the facts and circumstances undisputed in that case were sufficient to authorize the trial court's finding that Mrs. Sharpe had no notice of the pendency of the tax suit. It does not stand to reason, as Judge Boyce remarked, that the owner of property worth at least $3,500 would permit it to be sold for taxes when the amount due was only $7.31, and especially so when the property was being dwelt in and lived upon and being improved all the time, both before and after the tax suit was filed and sale under that decree made.

[4] But what are the facts in this case that corroborate the testimony of Mr. Kiber, as required by the rule we have announced? It is suggested by energetic and able counsel for him that in the first place he is a young business man, and that it is not probable that he would have overlooked a suit that had been filed against him to which he claimed to have a perfect defense, had he been notified of the suit. In the next place, it is contended that when he received the letter from Mr. Joseph's attorneys he felt interested enough to come to Beaumont and see Mr. Joseph's attorneys and explain to them that he did not owe Mr. Joseph anything, and that that fact showed that he did not intend or would not have willingly let the suit go by default. In the next place, it is contended that Mr. Kiber knew that his business was subject to execution, and that he could not have prevented the satisfaction of a judgment by Mr. Joseph, and, further, that it is reasonable to suppose that he would have defended the suit in the justice court instead of waiting and resorting to the district court for his protection, because the cost of a defense in the justice court would have been considerably less in all reason than that in the district court. Well, these are circumstances that have some probative force, but are they sufficient to warrant a trial court or trial jury in saying that the proof was clear and satisfactory, or that Mr. Kiber's denial of service in the justice court was so strongly corroborated by facts and circumstances as to warrant the conclusion that the recitation of due service in the judgment and officer's return and his verbal testimony upon the stand in support of the return were false. We cannot conclude that such showing by Mr. Kiber was sufficient, and to sustain his contention in this case would be, in our opinion, to virtually hold that his denial alone of service in this case was sufficient to overcome the strong presumption that he was, in fact, served.

In reaching this conclusion, we are not unmindful of the rule that in ordinary cases where an issue of fact is determined by a trial court or jury the same is binding upon this court. This is so where the question of credibility of the witnesses is the matter for determination, or where the weight of the evidence or the contradictions between witnesses is the matter for solution; but, as said by the Supreme Court of this state and all the Courts of Civil Appeals following it, the issue in this case is not one of ordinary fact. We cannot escape the conclusion that this judgment must be reversed and the cause remanded, if we are to give the rule as announced in such cases the application that all appellate courts, when speaking on it, have given it.

It follows that it is our opinion that the judgment must be reversed, and the cause remanded, and it is so ordered.